**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jean Golden, individually and in her capacity as Participant under the Delta Dental Plan for employees of wwwrrr, Inc. (Delta Group Dental Plan Contract Number 667), and in her capacity as Participant under the wwwrrr, Inc., Retirement Savings Plan, and Joanne Chabot, individually and in her capacity as Participant under the Delta Dental Plan for employees of wwwrrr, Inc. (Delta Group Dental Plan Contract Number 667), and in her capacity as Participant under the wwwrrr, Inc., Retirement Savings Plan,

Plaintiffs,

v.

wwwrrr, Inc., Paul Gullickson, individually and in his capacity as Trustee of the wwwrrr, Inc., Retirement Savings Plan, Troy Rossow, individually and in his capacity as Trustee of the wwwrrr, Inc., Retirement Savings Plan, wwwrrr Liquidation Company, LLC, Delta Dental Plan of Minnesota,[1] wwwrrr, Inc., Retirement Savings Plan, Convergent Capital Partners I, L.P., and North American Fund III, L.P.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-346 ADM/SRN

---

David A. Orenstein, Esq., Parsinen, Kaplan, Rosberg & Gotlieb, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiffs.

Alan I. Silver, Esq., Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, appeared for and on behalf of Defendants.

---

[1] Pursuant to a settlement agreement, Plaintiffs have filed a Stipulation and Order for Dismissal Without Prejudice [Doc. No. 32] of their claims against Delta Dental Plan of Minnesota, terminating Delta Dental as a party.

FILED 2-22-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 2-22-02
DEPUTY CLERK ________

## I. INTRODUCTION

On December 14, 2001, the Motion for Summary Judgment [Doc. No. 35] of Defendants wwwrrr, Inc., (the "Company"), wwwrrr, Inc., Retirement Savings Plan (the "Plan"), Paul Gullickson ("Gullickson"), and Troy Rossow ("Rossow"), (collectively "Defendants"), was argued before the undersigned United States District Judge. Gullickson, Rossow and the Plan move for summary judgment on all claims against them, and the Company moves for partial summary judgment on the counts of the Complaint alleging Employee Retirement Income Security Act of 1974 ("ERISA") claims. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

The Company was an educational technology "dot-com" company, which at its zenith employed 140 persons. In the winter of 2000 the Company experienced severe financial trouble and was attempting to negotiate a sale of the company.[2] On December 15, 2000, the Company laid off 20 employees, and placed the remaining employees on a two week unpaid leave status because of insufficient funds to pay wages. Gullickson Aff., ¶ 14.

On Monday, January 2, 2001, the employees returned to work, and the Company held a staff meeting for all employees. At the meeting, Gullickson, the Company President and CEO, was asked by an employee whether or not the Company had funds in the bank to pay future wages. Plaintiffs Jean Golden and Joanne Chabot (collectively, "Plaintiffs"), allege Gullickson represented that there

---

[2] WRC Media, a holding company for multiple other companies, and its venture capital fund, Ripplewood, since August, 2000, were the prospective buyers. The Company was hopeful that a sale would be finalized at the end of January, 2001.

were sufficient funds on hand to make payroll going forward.[3] On Monday, January 8, 2001, Gullickson learned that the expected sale of the Company was not going to occur due in part to changed market conditions. On January 9, 2001, the Board of Directors responded to the failed sale initiative by deciding to close the company. On Wednesday, January 10, 2001, the Company announced the closing to all employees, and laid off all employees. At the time of closing, the Company had assets of approximately $5 million and liabilities of approximately $13 million. Gullickson Aff., ¶ 21.

Arising from the events, Plaintiffs assert various claims. Plaintiffs allege that Gullickson fraudulently represented at the employee meeting on January 2, 2001, that the Company had funds to meet payroll, inducing the employees to remain for eight days of continued employment before the Company's closing on January 10, 2001. Amended Complaint, Count IX. Plaintiffs allege that the Company's serious financial difficulties caused a delay in depositing its employees' 401(k) contributions into the Plan trust during December, 2000, and dating back to November, 1999. Pl. Mem. in Opp. at 4. Plaintiffs claim that the Company gained the use and benefit of approximately $17,000 for each bi-monthly pay period that contributions were delayed, which resulted in employees being deprived of their earnings on these funds. Id. The Company and the Plan, as well as the individuals Gullickson and Rossow, co-trustees of the Company's 401(k) Plan, allegedly breached their fiduciary duties and violated ERISA by failing to timely deposit contributions into the Plan trust, and by restricting access to Plan benefits. Amended Complaint, Counts XVII, XVIII, XX.

---

[3] The defense version is that Gullickson stated that there was a commitment from the Company's senior secured lenders to fund operations through January 31, 2001, the target date for the expected closing of the sale of the company, and not that the funds were actually in the bank. Gullickson Aff., ¶ 16. For purposes of this Motion, however, Plaintiffs' allegations are accepted as true.

Plaintiffs also assert an additional ERISA benefits due claim against the Plan. Id., Count XVI. Plaintiffs seek equitable relief under ERISA against the Company, Gullickson and Rossow. Id., Count XIX. Finally, Plaintiffs claim attorneys' fees against the Company, the Plan, Gullickson and Rossow. Id., Count XXI.

Defendants maintain the ERISA based claims are unfounded, because the Company paid only "net payroll" in its December 1 and 15, 2000, payrolls, and did not deduct 401(k) contributions from employee wages. Def. Mem. in Supp. at 7. The 401(k) contributions for those pay periods were ultimately paid on January 23, 2001, by personal funds of Gullickson and Dale LaFrenz ("LaFrenz"), the Company's Chairman of the Board. Gullickson Aff., ¶ 12. As such, Defendants argue, there were simply no "assets of the Plan" to be wrongfully diverted.

The Company defaulted on its premium payments for dental and health coverage, causing Delta Dental to terminate coverage on January 31, 2001, retroactive to August 31, 2000, and Blue Cross/Blue Shield of Minnesota to cancel health coverage effective December 31, 2000. The Company located a portable individual plan and gave employees a one time bonus on January 5, 2001, to assist in paying the premiums. Id., ¶ 13. The source of the bonus funding was $11,000 from North American Fund III and $10,000 from LaFrenz.

In addition to the fraud and ERISA claims, Plaintiffs also assert claims for 13 unpaid days of work. Amended Complaint, Count VII. The Company does not contest the employees' contractual entitlement to compensation for days worked. Gullickson Aff., ¶ 20. Plaintiffs have brought contract claims against the Company to recover back wages and expenses under Minn. Stat. § 181.13, for alleged breach of contract for failing to provide 60 days notice of termination, for failure to pay dental plan benefits, and for failure to provide notice of limitation of health benefit

coverage under Minn. Stat. § 60A. Amended Complaint, Counts VIII, XI and XII. These claims are not the subject of the instant Motion and remain at issue.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).

### B. Fraudulent Misrepresentation

Under Minnesota law, a successful claim of fraudulent misrepresentation requires a showing, *inter alia*, that the plaintiff detrimentally relied on the allegedly fraudulent statement. See Mudlitz v. Mutual Service Ins. Cos., 75 F.3d 391, 395 (8th Cir. 1996); Piekarski v. Home Owners Savings Bank, F.S.B., 956 F.2d 1484, 1493 (8th Cir. 1992). This element is not shown where the plaintiffs

"did not decline pending job offers or pass up a concrete opportunity to look for other jobs." Piekarski, 956 F.2d at 1494; see also Hanks v. Hubbard Broadcasting, Inc., 493 N.W.2d 302, 309 (Minn. Ct. App. 1992).

In their purported tort action for fraudulent misrepresentation, Plaintiffs do not allege any declined employment opportunities because of the alleged misrepresentations made by Gullickson, but specify their damages as the lost wages incurred during the eight days they continued to work without compensation. Pl. Mem. in Opp. at 24. These are the same damages sought in Plaintiffs' contract claims for back wages. See supra, p. 4 n.6. The Minnesota Supreme Court has held that double recovery for the same harm is not allowed. Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 379 (Minn. 1990).

> Thus it is clear under Minnesota law that a party may properly recover under a breach of contract and fraud theory in an employment context. The issue becomes whether there is a breach of duty which is distinct from the breach of contract. The breach of an employment contract does not give rise to a tort claim where "the breach of duty is indistinguishable from the breach of contract."

Hanks, 493 N.W.2d at 308. (Internal citation omitted). In this case, Plaintiffs' contract and tort claims are indistinguishable.

In order to recover under both the theories of "fraud in the inducement to the contract[4] and breach of the employment contract," a plaintiff has "the burden of proving separate damages for fraud and for breach, lest the damage award be duplicative." Brooks v. Doherty, Rumble & Butler,

---

[4] Plaintiffs' fraud claim is also undermined by the Minnesota Supreme Court's failure to explicitly recognize a tort for fraudulent inducement to *continued* employment, such as Plaintiffs assert in this case. A distinction has been drawn between such claims and claims of fraudulent inducement to initial employment. See, e.g., McDonald v. Johnson & Johnson, 776 F.2d 767, 771 (8th Cir. 1985) (summarizing Minnesota cases holding that fraud in inducing initial employment is a distinct cause of action from a later breach of that contract).

481 N.W.2d 120, 128 (Minn. Ct. App. 1992), review denied, (Minn. April 29, 1992) (citing Wirig). In Brooks, the plaintiff alleged lost wages, but also claimed the fraud caused him emotional distress, damages to his personal and professional reputation, and the costs of a move to Arizona. Id. Here, Plaintiffs allege no distinct fraud damages, but rely only on lost wages as the damages sustained as a result of the alleged fraud.

As Hanks instructs, "a contract claim should not be converted into a tort claim." 493 N.W.2d at 307 (holding that plaintiff is "limited to damages flowing only from contract breach except in exceptional cases where the defendants breach of contract constitutes or is accompanied by an independent tort") (citing Wild v. Rarig, 234 N.W.2d 775, 789 (Minn. 1975)). Thus, Plaintiffs' fraudulent misrepresentation claim must be dismissed. Defendants' Motion for Summary Judgment on the fraud claim in Count IX of the Amended Complaint is granted.

**C. ERISA Claims**

Each of the remaining claims against Gullickson and Rossow all allege violations of ERISA arising out of their role as co-trustees of the Company's 401(k) plan. Plaintiffs claim that there was a "delay" in payment of Plan contributions for the Dec. 1 and Dec. 15, 2000, paychecks, as well as for paychecks dating back to November, 1999. Amended Complaint at ¶ 36.

Plaintiffs' claims depend on demonstrating an actual delay in deposit of funds that are Plan assets. 29 C.F.R. § 2510.3-102(a) defines "plan assets" as "amounts . . . that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." The statute mandates that "in no event shall the date determined pursuant to paragraph (a) of this section occur later than the 15th business day of the month following the month in which such amounts would

otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from a participant's wages)."[5] Id. at § 2510.3-102(b)(1).

The evidence of record establishes that all Plan contributions except one were made before the 15th day of the month following the relevant paycheck for all pay periods between November 5, 1999, through November 17, 2000, in accordance with the requirements of 29 C.F.R. § 2510.3-102(b)(1). Becker Aff. Ex. A. The exception is the August 25, 2000, paycheck contribution, which was made on September 15, 2000. Id. As such, no violation for delay in contribution occurred during this time period. Plaintiffs' claims regarding those contributions are dismissed.

The remaining contributions at issue are the December 1, 2000, and December 15, 2000, paycheck contributions. The parties agree that these contributions were not made on or before January 15, 2001, as 29 C.F.R. § 2510.3-102(b)(1) requires. The contributions were made on January 23, 2001. Gullickson Aff., ¶ 12. However, for a statutory violation to result, the moneys contributed to the fund must qualify as "assets of the plan" as defined by 29 C.F.R. § 2510.3-102(a). The December contributions were paid to the Plan in one contribution from the personal funds of Gullickson and LaFrenz, rather than through the payroll process of withholding funds from the Company accounts. Rossow Aff., ¶ 3. The employee pay stubs received in December, 2000, do reflect a deduction for 401(k) contributions because the Company's payroll provider, Payroll Control Systems, used the same payroll methods, software and pay stubs as had been the customary practice for the Company. The amounts shown on the pay stubs for 401(k) withholding in December, 2000,

---

[5] This section of the statute, titled "maximum time period for pension benefit plans," establishes the deadline for when Plan contributions, as defined in the prior section, must be made in order to avoid a statutory violation. 29 C.F.R. § 2510.3-102(b)(1).

were not withheld by the Company. Rossow Aff., ¶ 3. The Company had insufficient funds to meet payroll in December, 2000, therefore only the net payroll was paid on December 1 and 15, 2000, from funds borrowed through a bank loan personally guaranteed by LaFrenz. Gullickson Aff., ¶ 12.

Plaintiffs allege that the December, 2000, Plan contributions are "assets of the Plan," and a failure to promptly deposit them is a prohibited transaction for which Gullickson and Rossow, as plan fiduciaries, are subject to personal liability. Pl. Mem. in Opp. at 3. The parties agree that funds can be considered "assets of the Plan" without the moneys actually being contributed. "[A]ssets of the plan include amounts . . . that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan . . . ." 29 C.F.R. § 2510.3-102(a). Plaintiffs rely on the pay stub entry of contribution withholdings from December, 2000, to assert that moneys were withheld from employee wages during that month, thus constituting Plan assets. See Carluccio Aff.; Becker Aff. However, the statute requires money to be withheld from an employee paycheck by an employer to meet the definition of "Plan assets." Because only net payroll was paid in December, and no moneys were "withheld" from employee wages during December, no "Plan assets" existed during December, 2000, as defined by 29 C.F.R. 2510.3-102(a). Accordingly, no violation for delayed contribution of "Plan assets" occurred.

Plaintiff also argues the Company's past practice of making Plan contributions in as few as three to seven days after paycheck deposits establishes that it was capable of making contributions in under seven days. Plaintiffs argue that the statutory definition of "plan assets" in § 2510.3-102(a) also creates a requirement that all payments be made on the earliest date on which such contributions can reasonably be separated. Plaintiffs therefore argue Defendants violated this provision because they did not make all payments in under seven days.

Plaintiffs offer no support for the contention that because an employer pays contributions in less than a week on some occasions, the employer is always capable of paying contributions that quickly. There is no basis to hold an employer to such a pattern when financial difficulties over time impact the ability to make contributions. The statute outlines the deadlines for timely contributions in § 2510.3-102(b)(1). Defendants made the Plan contributions in a timely manner in all cases except for the December 1 and 15, 2000. The December 1 and 15 contributions were not "Plan assets" under the statute.

Assuming, *arguendo*, the December 1 and 15 contributions are "Plan assets," Defendants still did not violate 29 C.F.R. § 2510.3-102. Plaintiffs assert that, by not depositing contributions until January 23, 2001, the Plan assets were not timely segregated for contribution to the Plan on the earliest date on which such contributions could reasonably be segregated. Pl. Mem. in Opp. at 26. However, it is undisputed that the Company did not have sufficient assets to meet the net payroll, let alone cover tax withholdings or 401(k) contributions, during December, 2000, or January, 2001. Gullickson Aff., ¶ 12; Rossow Aff., ¶ 2. As such, the additional funds to cover the Plan contributions during that time period simply could not "reasonably be segregated from [the Company's] general assets." 29 C.F.R. 2510.3-102(a). Moreover, the Plan contributions made in January, 2001, *never were* segregated from the Company's general assets, since those contributions were not paid from the Company's general assets, but from Gullickson and LaFrenz's personal funds.

Defendants' Motion for Summary Judgment on the ERISA claims in counts XVI and XIX of the Amended Complaint is granted. Accordingly, there was no breach of fiduciary duty in the absence of a prohibited delay in contribution or a prohibited transaction. See Voyk v. Brotherhood

of Locomotive Engineers, 198 F.3d 599, 607 (6th Cir. 1999) (finding no basis for a fiduciary duty obligation where relevant funds are not "plan assets"). Defendants' Motion for Summary Judgment on the fiduciary duty claims, counts XVII, XVIII, and XX of the Amended Complaint, is granted. Finally, because Plaintiffs' claim of attorneys' fees is predicated on Counts XVI through XX, each of which have been dismissed, the claim of attorneys' fees in Count XXI is also dismissed.

**IV. CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 35] is **GRANTED**.

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 22, 2002

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.